In re McULTA.

(District Court M. D. Pennsylvania. June 27, 1911.)

No. 1,791.

1. NAMES (§ 20*)—CHANGE OF NAMES—COMMON-LAW RULE—STATUTES.

Act Pa. April 9, 1852 (P. L. 301), authorizing a court of common pleas to change the name of any person residing in the county by a decree on petition and notice, did not change the common-law rule that a man may lawfully change his name at will and will be bound by any contract into which he enters under his adopted or reputed name, and that he may sue or be sued in that name.

[Ed. Note.—For other cases, see Names, Cent. Dig. § 18; Dec. Dig. § 20.*]

2. BANKRUPTCY (§ 140*)—OWNERSHIP OF PROPERTY—FRAUD IN ACQUISITION.

Where creditors of a bankrupt sold goods to him in an assumed name the credit being extended to the man, as distinguished from the name, the bankrupt did not obtain title by fraud because he did not disclose his true name to his creditors.

[Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 140.*]

3. BANKRUPTCY (§ 399*)—EXEMPTIONS—SALE OF GOODS BY A BANKRUPT AFTER PETITION FILED.

Where creditors of a bankrupt permitted him to keep possession of his property and conduct his store after filing of a petition and before the election of a trustee, instead of having a receiver appointed as they could have done, the fact that during such period the bankrupt sold goods from his stock without keeping track of all of such sales and the proceeds thereof, was not such misconduct as would deprive him of his right to exemptions.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 669; Dec. Dig. § 399.*]

4. BANKRUPTCY (§ 400*)—EXEMPTIONS—CREDITORS.

Where a bankrupt sold goods from his stock between the filing of his petition and the election of a trustee, during which time he was permitted to remain in possession, the amount received therefor, should be deducted from his exemptions, but the burden of proving that he sold more than he admitted having sold was on the excepting creditors.

[Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 400.*]

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

In Bankruptcy. In the matter of bankruptcy proceedings of J. D. McUlta. On certificate to review a referee's decision allowing exemptions. Affirmed on the opinion of the referee, which is as follows:

I, Arthur A. Smith, one of the referees of said court in bankruptcy, do hereby certify that in the course of the proceedings in said cause before me the following question arose, pertinent to the said proceedings:

The facts as disclosed by the evidence are as follows: The bankrupt's residence before his removal to Williamsport, Pa., about six years ago, was at Maine, N. Y., where he was known by his real name, Truman Day Mc-Cleas. Owing to domestic troubles he deserted his wife and family, came to Williamsport, assumed the name of J. D. McUlta, obtained employment at the Park Hotel, where he worked for two years under his assumed name. He then engaged in the grocery business in said city, which he conducted for the past four years under the name of J. D. McUlta, his assumed name. No person in the city of Williamsport knew of his past life, or that he was living under an assumed name. Shortly after his arrival in Williamsport he wrote a letter to his wife, informing her of his whereabouts and his assumed name. He conducted his grocery store, did business, and was known in and about Williamsport by the name of J. D. McUlta. All goods were sold to him under that name, and his creditors knew him only as J. D. McUlta, delivered goods to him and extended him credit under that name.

Four objections to the allowance of any exemption to the bankrupt are raised by the exceptions, which we will dispose of in their order.

[1] I. Because there is no such person as J. D. McUlta, who claims to be entitled to the benefit of the exemption provided by the act of Congress establishing a uniform system of bankruptcy throughout the United States, approved November 28, 1898, and its several supplements.

At common law a man may lawfully change his name and will be bound by any contract into which he enters under his adopted or reputed name; and by such name he may sue and be sued. Doe v. Yeates, 5 Barn. & Ald. 544; The King v. Inhabitants of Billinghurst, 3 M. & S. 250; Petrie v. Woodworth, 3 Caines (N. Y.) 219; In re Snook, 2 Pittsb. R. (Pa.) 26; Linton v. First National Bank of Kittanning (C. C.) 10 Fed. 894,

There is in force a statute in Pennsylvania, passed April 9, 1852 (P. L. 301) which provides a method for a person to change his name; said Act reads as follows: "It shall be lawful for the court of common pleas of any county * * * to make a decree, changing the name of any person resident in said county, at any time three months after being petitioned to do the same by such person; provided, that notice of the decree, after the same shall be made, shall be published in one or more newspapers to be designated by the court, for four successive weeks." The act of 1852 did not change the common-law rule, but was passed in affirmance and aid of the common law. Without the aid of that act, a man may change his name or names, first or last, and when his creditors and the community have acquiesced and recognized him by his new designation, that becomes his name. Laflin & Rand Co. v. Steytler, 146 Pa. 434, 23 Atl. 215, 14 L. R. A. 690. Hence there was no law in force in the state of Pennsylvania, when the bankrupt came to this state and changed his name, prohibiting such a change, and, the same being allowed under the common law, he and those with whom he dealt were bound by the name which he assumed while in the state of Pennsylvania.

[2] II. Because Truman Day McCleas who claims the exemption under the assumed name of J. D. McUlta is estopped from claiming the benefit of the exemption provided by the acts of Congress, out of the goods in the hands of the trustee, as said goods were purchased and acquired of the creditors by fraud in that the said Truman Day McCleas represented himself to said creditors as being J. D. McUlta when in fact he was not.

This exception charges the bankrupt with fraud in obtaining the goods and merchandise purchased, in that he did not inform his creditors of his right name, and therefore he did not obtain title to the goods which he

claims as exempt. We dismiss this exception. A name is used merely to designate a person or thing. It is the mark or indicia to distinguish him from other persons, and that is as far as the law looks. In re Snook, supra; Rich v. Mayer (City Ct. N. Y.) 7 N. Y. Sup. 69, 70. They are merely used as means of indicating identity of persons. Meyer v. Indiana National Bank 27 Ind. App. 354, 61 N. E. 596. There is nothing in the evidence to show that any fraud was committed by the bankrupt in purchasing the goods. They were sold to him under his assumed name (the creditors never knew until after the institution of bankruptcy proceedings and the adjudication, that the bankrupt was doing business under an assumed name;) and he took title to the goods and could have disposed of them under his assumed name and given a good title to the same. Credit in this case was given to the man—not the name—and that man was J. D. McUlta. The creditors cannot now claim that they never parted with their goods because they learned that the man—the person or being—to whom they sold the goods was known before he came to this city, over six years ago, by a different name. The bankrupt has title to the goods free from any fraud, and such a title that he can claim his exemption allowed by the laws of the state of Pennsylvania therefrom.

[3] III. Because Truman Day McCleas under the assumed name of J. D. McUlta sold goods of the bankrupt stock from the date of the filing of the petition in bankruptcy, December 17, 1910, to the meeting of creditors to choose a trustee, January 16, 1911, without keeping any account of the goods sold or the money realized from the sale thereof, and is not entitled to have any goods set aside to him under the act of Congress allowing an exemption.

The bankrupt was allowed to keep possession of his property and conduct his store from the date of the filing of the petition to the election of a trustee. It was the duty of the creditors, when they filed their petition, or after they filed their petition, and after the case was referred, to petition the court or referee for the appointment of a receiver to take charge of the goods; in which event, exceptions Nos. 3 and 4 would never have entered into the consideration hereof. On the other hand, it was the duty of the bankrupt to keep his stock intact and turn it over to his trustee when elected. It appears from the evidence that between the date of the filing of the petition and the appointment of the trustee the bankrupt conducted his business as usual; and this is assigned as a reason of depriving the bankrupt of his exemption. Such conduct on the part of the bankrupt is not sufficient to deprive him of his exemption under the law of the state of Pennsylvania.

[4] IV. If Truman Day McCleas under the assumed name of J. D. McUlta is entitled to the benefit of the exemption provided by the acts of Congress, he is only entitled to have goods set aside to him out of the bankrupt estate for an amount which is the difference between the value of the goods which J. D. McUlta sold after the filing of the petition in bankruptcy, December 17, 1910, and the election of a trustee by the creditors, January 16, 1911, and the exemption of $300.

We sustained this exception, and directed the trustee to deduct from the goods set apart to the bankrupt the amount of goods which the bankrupt sold during the interval of the filing of the petition and the election of a trustee. The creditors claim that a sufficient amount has not been deducted and that the burden was upon the bankrupt to show the amount of goods which he sold.

During the examination of the bankrupt by his creditors, he admitted that he sold goods, keeping an account on slips, which he deposited in his cash register. When asked to produce the slips he stated that all could not be found, but produced such as were in his possession. The creditors established by the testimony of the bankrupt that he had sold certain goods, and then took the position that the burden of proof shifted from them to the bankrupt. The burden of proof rests upon him, who substantially asserts the affirmative of the issue. This burden never changes. The weight of the

evidence may shift from one side of the case to the other. In the matter before us, the creditors showed that the bankrupt had sold certain goods, and the bankrupt later on in his examination admitted to selling more goods than the creditors were able to prove he had sold. The burden of proof that he sold more than he stated he had sold was then placed upon the exceptants, and they were unable to sustain their exception any further. Hence we were bound in our findings by the testimony taken before us; and we accordingly ordered the sum of $18.46 deducted from the amount which the bankrupt claimed, and made an order to that effect; which order has been appealed from.

We hand up to the court herewith the list of goods claimed by the bankrupt to be exempt, the list of goods set aside to the bankrupt by his trustee, the exceptions filed thereto by the creditors, the answer of the bankrupt to said exceptions, the order of the referee made thereon, and the testimony taken before the referee.

Sprout & Cupp, for claimant.
Ames & Hammond, for exceptants.

WITMER, District Judge. The report of the learned referee contains a satisfactory discussion of the questions submitted, and I need only say that I agree with his reasoning and conclusions, in support of which I will add the thought, moreover, that if the changed name was assumed by the bankrupt in fraud of any one, it clearly appears that it is independent of his creditors, its taints do not run in the veins of the transaction before the court, and hence do not corrupt the current. It does not follow that a party who is a rogue in his other dealings shall be deprived of his rights in another transaction wherein he has been without fault. It is only where the fraud do inhere in the very transaction itself, by its intended effect preventing the collection of the debt, that the fraudulent debtor can claim no right of exemption under the law. The order of the referee is affirmed.