## Weinstein's Petition

*Samuel C. Nissenbaum*, for petitioner.
*Samuel Melvin Rosenfeld*, contra.

CRUMLISH, J., May 5, 1939.—Charles Weinstein, singleman, a native of Russia, who claims derivative citizenship through the naturalization of his father, Sam Weinstein, has filed a petition under the Act of April 18, 1923, P. L. 75, to change his name to James C. Winston.

When the petition came on for hearing, proof of publication of notice, title company's search and affidavit showing that there were no judgments or decrees of record against petitioner were presented. At the same time, one A. P. Moegle appeared by counsel and objected to the granting of the prayer of the petition on the ground that he had preferred certain criminal charges against petitioner which grew out of commercial transactions between the parties and which were the basis of a civil suit instituted in the local Municipal Court. The hearing was continued to give the parties an opportunity to file depositions in support of their respective positions. The parties had failed to comply with the court's direction when the matter came on finally for hearing. However, petitioner

and objecting party having adjusted their differences, petitioner filed, possibly in lieu of depositions, an affidavit averring that: (1) The bills of indictment based on Moegle's charges had been "nolle prossed"; (2) the civil suit between the parties was settled, discontinued, and ended; (3) said Moegle agreed to offer no objection to the granting of the prayer of the petition under consideration; and (4) petitioner was engaged in operating a grocery and delicatessen business in the City of Philadelphia.

Although the courts are liberally disposed to granting petitions for change of name upon proof of compliance with statutory requirements, yet we feel, despite the attempt to withdraw the objections, that this matter requires our careful consideration.

Upon an examination of the records of the matters brought to the court's attention in these proceedings, we found that A. P. Moegle, the objecting party, instituted an action in assumpsit against petitioner under the name of J. C. Arnold, also known as J. C. Winston, in the local Municipal Court, as of November term, 1937, no. 284. Exhibit "A" of the statement of claim was alleged to be a true and correct copy of plaintiff's book of original entry and the charges therein were against one J. C. Arnold. In paragraph 2 of the said statement of claim, it was alleged that the said J. C. Arnold was also known as J. C. Winston. The affidavit of defense was executed by J. C. Winston.

Upon an examination of the records of the matters referred to in these proceedings, we found:

1. That our petitioner's father, Sam Weinstein, filed his petition for naturalization in the local quarter sessions court, alleging that petitioner was born May 24, 1906, in Russia; and that a certificate of naturalization was issued to the said Sam Weinstein by the said court on November 5, 1925, which included petitioner;

2. Bills of indictment nos. 761, 762, 763, 764, and 765, March sessions, 1938, Court of Quarter Sessions of the

Peace of the County of Philadelphia, charged Charles Weinstein, alias Carl Weinstein, alias J. C. Arnold, alias J. H. Arnold, alias J. C. Winston, respectively, with "making and delivering checks on a depository in which the maker did not have credit or funds with which to pay the same"; "making and delivering checks on a depository in which the maker did not have credit or funds with which to pay the same"; "unlawfully assuming the name of J. C. Arnold", etc.; "unlawfully conducting business under the assumed and fictitious name, style, and designation of J. H. Arnold", etc.; and "perjury" in that he did in the aforesaid affidavit of defense allege that he was the manager of the business conducted and not the owner thereof and which was "false and untrue because the said Charles Weinstein, alias Carl Weinstein, alias J. C. Arnold, alias J. H. Arnold, alias J. C. Winston, was then the owner of said store";

3. In the affidavit filed in support of his petition, it was alleged that "the assistant district attorney, who prosecuted the case, made the statement to the court that the district attorney's office had investigated the entire case and that there was no foundation for the charges; that there was no ground on which the prosecutor could sustain an action and that thereupon the bills were nolle prossed and the costs of the prosecution were divided and thereafter paid." The notation on each bill of indictment reads as follows: "District attorney at leave of court enters a nolle prosequi on the within bill of indictment at request of the prosecution on payment of costs." This endorsement is signed by the assistant district attorney, the trial judge, and the prosecutor. There also appears on each bill a notation that the costs have been paid.

Without a doubt, Moegle left no stone unturned in his desire to collect the claim against petitioner; and his objection to the prayer of the petition under consideration was motivated by the same desire. Nevertheless, the facts brought to the court's attention as the result of the objec-

tion raise a serious question about the bona fides of the alleged reasons for the change of name, to wit, that he is "subject to great inconvenience and embarrassment by reason of the fact that his name is hard to pronounce and spell; that he has difficulty in using his name in business transactions; that he used the name of Winston in correspondence, employment, and social contacts during the past; and your petitioner is caused considerable embarrassment because he alternately used both names."

What great inconvenience and embarrassment does this petitioner suffer by reason of the fact that his name is hard to pronounce and spell? In the absence of an explanation, we find it difficult to understand this allegation. Charles Weinstein is neither hard to pronounce nor difficult to spell. Moreover, Weinstein has become quite a familiar name. An examination of the local street and telephone directories indicates that there are many more Weinsteins than Winstons. Moreover, Weinstein is the name under which petitioner's parents, brothers, and sisters were naturalized citizens of this country. Likewise, we also find it hard to understand why petitioner should find any difficulty in using the alternate name Weinstein in business transactions. As to the use of the names Winston and Weinstein during the past and the consequential embarrassment, it may be pointed out that he has, according to the aforementioned records, also used the names of J. C. Arnold, Carl Weinstein, and J. H. Arnold.

The granting of the prayer of petitioner for change of name is within the sound discretion of the court. True, the common-law rule was that a man might lawfully change his name and would be bound by any contract into which he entered under his adopted or reputed name. See In re Petition of John Snook, 2 Pitts. Rep. 26 (1859), a decision by Daily, J., of the Court of Common Pleas of New York, which received the extraordinary compliment of being printed in the Pittsburgh Reports for the

"reason that the discussion of the subject is considered to be very exhaustive, and that the authorities cited in it might be of some value." See also In re McUlta, 189 Fed. 250 (1911), and Linton et ux. v. First National Bank of Kittanning et al., 10 Fed. 894 (1882).

The earliest act providing a mode for change of name was the Act of April 9, 1852, P. L. 301. This act was said to be in affirmance and in aid of the common law and to make an appointed time at which the change should take effect: Laflin & Rand Co. v. Steytler et al., 146 Pa. 434, 442 (1892); In re McUlta, supra. The Act of 1852, supra, as well as its amendatory Act of April 15, 1859, P. L. 673, was expressly repealed by the Act of 1923, under which this proceeding was instituted. The Act of 1923, while it authorizes the courts of common pleas to enter decrees for the change of names, by no means requires them to do so in every case. The wording of the enactment clearly shows that the authority conferred is discretionary. And it therefore follows that when a court entertains a serious doubt as to the granting of the change it may, in the interest of the general public, refuse to grant such a petition. The facts of this case are sufficient to raise this doubt. Moreover, we must not overlook the provisions of the Act of July 9, 1919, P. L. 822, sec. 1, which made it unlawful for any person to assume a name unless such change was made pursuant to proceedings in court and approved by the court.

Not only are the reasons advanced in support of the petition for change of name dubious and unsatisfactory but there has been an obvious disregard of the provisions of the Act of 1919, supra, in the assumption of such names as J. C. Arnold, J. H. Arnold, J. C. Winston, and Carl Weinstein. It is not unreasonable to assume that these changes took place after the passage of the Act of 1919, since defendant was known as Charles Weinstein at the time of his naturalization on November 5, 1925. See In re Ross' Contested Election, 21 D. & C. 57, 62 (1934).

*Order*

And now, May 5, 1939, the petition of Charles Weinstein praying for a decree to change his name to James C. Winston is dismissed.